IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

──────────────────────────────

COLLEEN NIEDZIELA,

                              Plaintiff,

          vs.                                    Civil Action No.
                                                 6:05-CV-1011 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

──────────────────────────────

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

MASTAITIS LAW OFFICE           STEPHEN J. MASTAITIS, JR., ESQ.
1412 ROUTE 9P
SARATOGA SPRINGS, NY 12866

FOR DEFENDANT:

HON. GLENN T. SUDDABY          WILLIAM H. PEASE, ESQ.
United States Attorney for the  Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL  BARBARA L. SPIVAK, ESQ.
Social Security Administration  Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278             SUZANNE M. HAYES, ESQ.
                               Assistant Regional Counsel
DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiff Colleen Niedziela, who suffers from several documented

medical conditions including chronic back and neck pain and has in the

past been diagnosed as suffering from fibromyalgia, has commenced this

proceeding seeking judicial review of the denial of her application for

Supplemental Security Income ("SSI") Social Security benefits.  In support

of her challenge, plaintiff maintains that the determination of the

administrative law judge ("ALJ") assigned by the agency to hear and

determine the matter, to the effect that she is not disabled, is not

supported by substantial evidence, is based upon the improper and

unexplained rejection of contrary opinions of her treating physicians and

her subjective pain complaints, and failed to take into account the

cumulative effects of her medical conditions.  Plaintiff also challenges the

ALJ's failure to elicit testimony from a vocational expert in lieu of resorting

to wooden application of the medical vocational guidelines (the "grid") set

forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2,

based upon the presence of pain, a non-exertional limitation substantially

eroding the number of jobs otherwise available to the plaintiff in

accordance with the grid.

Having carefully reviewed the record in the light of plaintiff's arguments, I conclude that the ALJ's finding of no disability resulted from the application of proper legal principles, and is supported by substantial evidence.

I.      BACKGROUND

Plaintiff was born on May 22, 1959; at the time of the second hearing in this matter, conducted on February 1, 2005, plaintiff was forty-five years old.  Administrative Transcript at pp. 66, 287, 312.[1]  Plaintiff is five foot one inch tall, and weighs approximately one hundred pounds.  AT 288, 313.  Plaintiff is divorced, having been married twice, and has two children, ages twenty-seven and twenty-eight from her first marriage, and a thirteen year old daughter, who resides with the plaintiff, as a result of the second.  AT 289, 314.  Plaintiff and her daughter live in a "double wide" mobile home Sprakers, New York.  AT 290, 315.

Plaintiff left high school before graduating, but later achieved a general equivalency diploma ("GED").  AT 288, 323-24.  Plaintiff once attempted to take additional educational courses at a local community

---

[1]      Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 6, which was filed by the Commissioner together with his answer, will be cited herein as "AT ___."

college, but was unable to meet the physical requirements associated with attending classes.  AT 323.  Plaintiff has not worked since 1991, when she was employed in a clerical position by a local business which has since closed.  AT 288, 323.  Plaintiff receives public assistance and food stamps, and in the past was additionally receiving workers' compensation benefits.  AT 291, 305-06.

Over time, plaintiff has suffered from several medical conditions of varying degrees of severity.  Plaintiff has been treated in the past, dating back at least to the 1990s, for chronic back and neck pain, principally by Dr. Thomas S. Eagan, an orthopedic surgeon.  X-rays taken of plaintiff's cervical spine in 2002 revealed spondylosis with marked narrowing at the C5-6 level and interior osteophyte formation.  AT 205.  Magnetic resonance imaging ("MRI") testing, performed on April 2, 2002, revealed a "[c]entral C5-6 herniated disc combined with osteophyte" formation, together producing a "mild spinal stenosis" with "bilateral recess stenosis secondary to bone spurs."  AT 192, 204.  At various points, plaintiff has reported to certain of her health care professionals, including Dr. Phillip J. Marra, a neurosurgeon, that the neck condition has resulted in radiation of pain into both extremities, although more so in the left side.  *See, e.g.,* AT

204, 241.  After discussing the possibility of surgical intervention on more than one occasion with Dr. Marra, plaintiff opted against it, including in July of 2002, and the issue apparently has not been revisited since that occasion.  AT 241-42.

In addition to her neck and back pain, plaintiff has in the past complained of chronic headaches, for which she received treatment from Kenneth Riley, DO.  AT 160-63.  The last reference in any medical records before the agency regarding plaintiff's reports of headaches, however, is a progress note dated April 4, 2001, from Dr. Kenneth Riley, who at that point increased plaintiff's prescription for Amitriptyline to 50 milligrams per dose.  AT 160.  The record contains no evidence of further treatment for the headaches, and by the time of the hearing plaintiff had apparently discontinued use of the Amitriptyline.  AT 297, 300, 318.

In addition to complaints of headaches and neck and back pain, plaintiff has reported symptoms, including chronic back pain, which, in the opinions of Dr. Eagan and others, including Dr. Helen Feng, a rheumotoligist, are consistent with a diagnosis of fibromyalgia.  *See, e.g.* AT 133, 137, 153, 155; *see also* AT 276 (recording impression of Dr. Balagtas on March 14, 2005 as "[r]ule out fibromyalgia").  In an office note

dated March 26, 2002, Dr. Eagan made reference to a referral to Dr. Joel
Kremer of Albany, New York, for a rheumatological consultation.  AT 205.
There is no evidence in the record, however, reflecting that the plaintiff in
fact underwent such a consultative examination by Dr. Kremer.

Plaintiff has attempted various means of addressing her pain
including through the use of physical therapy, which was discontinued
after only a brief time as not helpful, *see* AT 296; a TENS unit, AT 297,
331;  and Lortab – the only prescription drug taken by the plaintiff for her
pain, AT 296, 318.[2]  During her administrative hearing, plaintiff described
her daily activities as including driving, grocery shopping, cooking, house
cleaning, and doing laundry, often performed with the assistance of her
daughter.  AT 292, 315-16.  Plaintiff is able to walk the family dog,

---

[2]     Plaintiff also has a history of kidney stones, which have required several
surgical procedures undertaken to alleviate the condition.  *See, e.g.* AT 320-21, 329.
Although plaintiff has testified that this condition persists, *see* AT 320-21, 334-35, both
the records and her testimony reflect that the last medical treatment sought for kidney
stones was in 2001.  AT 321, 334-35.  It therefore does not appear that the kidney
stones factor into the disability calculus in this case.

During the most recent hearing, plaintiff also testified to experiencing
additional medical conditions not previously emphasized in her medical records,
including Raynaud's Disease – a vascular disorder characterized by discoloring of the
hands – and a broken tailbone alleged to make it difficult for her to sit upright.  *See* AT
326, 338.  Plaintiff does not seriously press these conditions as contributory to her
claimant disability, nor do her medical records disclose any serious limitations
associated with the conditions.

although only reports being able to walk up to one hundred feet without tiring.  AT 333, 293.  Because of her condition, plaintiff has been required to give up various of her hobbies, including sewing, gardening, and volunteering as a girl scout leader.  AT 330.

II.     PROCEDURAL HISTORY

    A.     Proceedings Before The Agency

Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act on November 15, 2001.  AT 66-68.  Following the denial of that application, a hearing was conducted before ALJ Joseph Gibbons on June 16, 2003 to address plaintiff's claims for benefits.  *See* AT 283-308.  After conducting a *de novo* review of evidence in the record, including plaintiff's hearing testimony, ALJ Gibbons later issued a written decision, dated July 24, 2003, finding that Niedziela was not disabled at the relevant times and thus upholding the denial of benefits.  In his decision the ALJ reviewed the evidence in the record, including reports generated from plaintiff's treating sources and the opinions of medical consultants, and from that evidence determined the plaintiff's residual functional capacity ("RFC").  Applying his RFC formulation and other relevant characteristics to the grid, ALJ Gibbons concluded that a finding

of no disability was warranted.

On or about September 17, 2004, the Social Security Administration Appeals Council granted plaintiff's request for review of the ALJ's determination and, after determining that ALJ Gibbons' decision was flawed, remanded the matter for further consideration by an ALJ.  AT 225-26.  Addressing the adequacy of the ALJ's determination, the Appeals Council concluded that the ALJ's RFC finding, which served as the lynchpin for his finding of no disability, was defective in that it did not take into consideration the apparent existence of manipulative, nonexertional limitations reflected in the record.[3]  AT 225.  On remand, the ALJ was specifically instructed to reconsider his RFC finding in light of the evidence in the record, and additionally to further evaluate the plaintiff's subjective pain complaints.  AT 225-26.  The Appeals Council also instructed the ALJ, "[i[f warranted by the expanded record . . .", to elicit testimony from a vocational expert in order to probe the existence of jobs in the national and local economies which plaintiff is capable of performing, notwithstanding her limitations.  AT 226.

On remand, ALJ Gibbons conducted a second hearing, held on

---

[3]     The Appeals Council also noted that the ALJ's exhibit list did not include all of the exhibits contained within the agency's file.  AT 225.

-8-

February 1, 2005.  AT 309-342.  Following that hearing, at which plaintiff was represented by counsel, ALJ Gibbons issued a second decision, dated May 16, 2005, again finding that the plaintiff was not disabled.  AT 13-19.  In his decision, ALJ Gibbons applied the now familiar five step test for determining disability, concluding first at step one that plaintiff had not engaged in substantial gainful activity during the relevant period.  AT 14, 18.  After analyzing the available medical evidence, ALJ Gibbons next concluded that plaintiff suffers from several impairments of sufficient severity as to impair her ability to perform basic work activities, including fibromyalgia, a small disc protrusion at C5-6, a history of chronic headaches, and chronic pain syndrome, but concluded at step three that those conditions do not, either singly or in combination, meet or equal any of the presumptively disabling impairments listed in the applicable regulations.   20 C.F.R. Pt. 404, Subpt. P, App. 1.

After analyzing and rejecting plaintiff's pain complaints as overstated and unsupported by medical evidence in the record, and inconsistent with the extent of her daily activities, *see* AT 16, 17, ALJ Gibbons next found that plaintiff maintains the RFC to perform a full range of sedentary work. AT 17-18.  In light of the fact that plaintiff does not have any past relevant

work experience of significance for purposes of consideration at step four, ALJ Gibbons, noting the shifting of burdens to the Commissioner at this juncture, applied plaintiff's RFC and other relevant characteristics to the grid, concluding that under Rule 201.24 thereof a finding of not disabled was warranted.  AT 18.  ALJ Gibbons' decision became a final determination of the agency when, on June 22, 2005, the Appeals Council denied plaintiff's request for review.  AT 5-8.

B.   This Action

Plaintiff commenced this action on August 10, 2005.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency, on November 21, 2005.  Dkt. Nos. 5, 6.  With the filing of plaintiff's brief on February 21, 2006, Dkt. No. 9, and a brief on behalf of the Commissioner on April 3, 2006, Dkt. No. 10, the matter is now ripe for determination, and has been referred to me, on consent of the parties, for a determination pursuant to 28 U.S.C. § 636(c).[4]  Dkt. No. 12.

---

[4]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil

III.   <u>DISCUSSION</u>

A.   <u>Scope of Review</u>

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, her decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If,

however, the correct legal standards have been applied and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision should withstand judicial scrutiny regardless

of whether the reviewing court might have reached a contrary result if

acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859

_____

Procedure.

-11-

F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).
In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be
employed in determining whether an individual is disabled.  *See* 20 C.F.R.
§§ 404.1520, 416.920.  The first step requires a determination of whether
the claimant is engaging in substantial gainful activity; if so, then the
claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§
404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then
the second step involves an examination of whether the claimant has a
severe impairment or combination of impairments which significantly
restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

_____C.    The Evidence In This Case

Plaintiff's challenge of the Commissioner's determination, while

subdivided in her brief into three parts, essentially revolves around her

contention that the ALJ overlooked her fibromyalgia and the limitations

experienced by her as a result of that medical condition.  Plaintiff also

claims error as a result of the ALJ's rejection of her treating physicians'

diagnosis of fibromyalgia and her subjective pain complaints, and asserts

that particularly in light of the Appeals Council's earlier mandate, a

vocational expert should have been consulted to assist in the disability

analysis.

1.    Treating Physician

In support of her attack upon the ALJ's determination, plaintiff cites

the ALJ's alleged failure to give appropriate deference to the opinions of

her treating physicians.  Specifically, plaintiff challenges the ALJ's

apparent discounting of opinions of Dr. Eagan, an orthopedist, and Dr.

Marra, a neurosurgeon, suggesting her inability to use her left upper

extremity for lifting or carrying.  Plaintiff also contends that the ALJ

improperly rejected a diagnosis of fibromyalgia, based upon the lack of specific evidence in the record that she has eighteen trigger points normally associated with such a diagnosis.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[5]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the

_____

[5]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

Plaintiff's treating physician arguments, addressing findings of Drs. Eagan, Marra, and Feng, are to some degree vague.  It is not at all clear, for example, that the opinions of Dr. Eagan, who plainly qualifies as a treating source, were discounted.  While suggesting that opinions of Dr. Eagan in conflict with the ALJ's finding of no disability were rejected by the

-18-

ALJ, plaintiff's argument overlooks the fact that Dr. Eagan himself expressed the belief that plaintiff would be an excellent candidate, with vocational training, for light or sedentary work.  AT 153.  Indeed, in addition to opining that plaintiff could perform sedentary and even light work with vocational rehabilitation, Dr. Eagan recorded objective clinical findings revealing plaintiff's free range of motion in her cervical and lumbar spine area, with normal reflexes, no atrophy, good strength, and normal sensation.  AT 205.

It is true that in contrast to the situation involving Dr. Eagan, ALJ Gibbons did reject at least one opinion of Dr. Marra, reflected in an isolated treatment note stating "she is totally disabled at this time. . ."  *See* AT 261.  Such a conclusory opinion, however, is not entitled to deference since it addresses the ultimate issue reserved for the Commissioner based upon the unique requirements of establishing disability under the Act.  20 C.F.R. § 404.1527(e)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").  Moreover, Dr. Marra's clinical findings, on which the ALJ heavily relied in finding no disability, support a contrary view.  Dr. Marra's notes, for example, reveal findings of good strength in

plaintiff's upper and lower extremities, passive and active range of motion of the neck without pain, and normal tendent reflexes and biceps and triceps, with normal knee and ankle reflexes.  AT 241.  Although straight leg raising and testing were recorded as positive on the left side, straight leg raising was found to be positive on the right at sixty degrees, and a motor examination conducted by Dr. Marra revealed full strength in all of plaintiff's extremities.  AT 241, 244.  Dr. Marra's recorded findings based upon his examination and the April, 2002 MRI revealed only small protrusion with "mild" impression on the subarachnoid.  AT 241, 243.  In sum, aside from the single reference to disability properly discussed by the ALJ, Dr. Marra's findings are entirely congruent with the ALJ's RFC determination and conclusion that plaintiff is not disabled.

Dr. Feng, the third source regarded by the plaintiff as a treating physician, plainly does not qualify as such under the regulations.  Dr. Feng, a rheumotoligist, does not appear to have rendered treatment or even seen the plaintiff, since 1998 – some three years prior to the filing of her SSI benefits application.  *See* AT 129-45.  Given this remoteness in time, the ALJ properly disregarded Dr. Feng's conclusions, as not constituting those of a treating source.  *See* 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); *see also Carlson v. Barnhart*, No. 05CV1584, 2006 WL

2926818, at *13 (D. Conn. Aug. 30, 2006) (Garfinkel, M.J.) (refusing to

give physicians' opinions controlling weight because, *inter alia*, "they

lacked reliability given their remoteness in time"), *adopted*, Dkt. No. 16 (D.

Conn. Sept. 29, 2006) (Underhill, D.J.).

Even if Dr. Feng were properly regarded as a treating source, her

opinions do not necessarily conflict with those findings of the ALJ.  While it

is clear that the plaintiff may well suffer from a condition which has been

variously diagnosed as fibromyalgia, myofascial pain disorder, and chronic

pain disorder, such a diagnosis does not translate into an automatic

finding of disability; it is not the presence of such a medical condition, but

rather its limitations, which inform the question of whether or not a plaintiff

is under a disability.[6]  *Alvarez v. Barnhart*, No. 03 Civ. 8471, 2005 WL

78591, at *2 (S.D.N.Y. Jan. 12, 2005) (citing, *inter alia*, *Mongeur v.*

---

[6]    Fibromyalgia is described by a leading medical source as:

[a] syndrome of chronic pain of musculoskeletal origin but uncertain
cause.  The American College of Rheumatology has established
diagnostic criteria that include pain on both sides of the body, both above
and below the waist, as well as in an axial distribution (cervical, thoracic,
or lumbar spine or anterior chest); additionally there must be point
tenderness in at least 11 of 18 specified sites.

Stedmans Medical Dictionary (27th ed. 2000).  Fibromyalgia is also commonly referred
to as fibrositis.  *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003).

*Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).  Undeniably, fibromyalgia is

recognized as a potentially severe impairment that may support a claim of

disability under the Act, *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d

Cir. 2003), and by its very nature, fibromyalgia is not always readily

susceptible to detection or verification through clinical testing or other

objective means, *see id.*; *see also Cruz v. Apfel,* 97 Civ. 1170, 1998 U.S.

Dist. LEXIS 23385, at *22-23 (N.D.N.Y. Nov. 4, 1998) (Di Bianco, M.J.),

*adopted*, 1998 U.S. Dist. LEXIS 23384 (N.D.N.Y. Dec. 21, 1998) (Kahn,

D.J.).  Addressing the condition, the Seventh Circuit has explained that:

> fibromyalgia . . . [is] a common, but elusive and mysterious
> disease, much like chronic fatigue syndrome, with which it
> shares a number of features.  Its cause or causes are
> unknown, there is no cure, and, of greatest importance to
> disability law, its symptoms are entirely subjective.  There are
> no laboratory tests for the presence or severity of fibromyalgia.
> The principal symptoms are "pain all over," fatigue, disturbed
> sleep, stiffness, and – the only symptom that discriminates
> between it and other diseases of a rheumatic character –
> multiple tender spots, more precisely 18 fixed locations on the
> body (and the rule of thumb is that the patient must have at
> least 11 of them to be diagnosed as having fibromyalgia) that
> when pressed firmly cause the patient to flinch.  All these
> symptoms are easy to fake, although few applicants for
> disability benefits may yet be aware of the specific locations
> that if palpated will cause the patient who really has
> fibromyalgia to flinch. . . . Some people may have such a
> severe case of fibromyalgia as to be totally disabled from
> working, but most do not[.]

*Sarchet v. Chater,* 78 F.3d 305, 306-07 (7th Cir. 1996) (internal citations omitted).

Despite its elusiveness and potentially debilitating effects, fibromyalgia, like many other medical conditions, is one which may be, but is not necessarily, so limiting as to qualify as disabling under the Act. *See Coyle v. Apfel,* 66 F. Supp. 2d 368, 376-77 (N.D.N.Y. 1999) (Hurd, J.). In this instance there is no competent evidence, from either Dr. Feng or any other treating source, of limitations greater than those found in connection with the plaintiff, and upon which a finding disability could be predicated. Accordingly, the ALJ did not improperly reject the opinions of plaintiff's treating physicians.

2.    Credibility

Plaintiff maintains that in arriving at his finding of no disability, the ALJ improperly discounted her accounts of disabling pain. Plaintiff asserts that her subjective complaints of pain are adequately supported by objective medical evidence in the record, and that the ALJ's failure to credit that testimony is neither properly explained nor legally defensible.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis. 20 C.F.R. §§ 404.1529(a), (d),

-23-

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp.

2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to

evaluate a claimant's subjective testimony, including testimony concerning

pain.  *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In

deciding how to exercise that discretion the ALJ must consider a variety of

factors which ordinarily would be relevant on the issue of credibility in any

context, including the claimant's credibility, his or her motivation, and the

medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-

1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and

Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must

reach an independent judgment concerning the actual extent of pain

suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[7]  *Barnett*, 13 F. Supp. 2d at 316; *see also*

---

[7]     In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

_____

existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff contends, that she suffers from some degree of discomfort as a result of her conditions.  The fact that she suffers from discomfort, however, does not guaranty a finding of disability, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance the rejection of plaintiff's complaints of disabling pain were rejected on the basis that her claims regarding the limitations imposed by it were not wholly credible.  Virtually all of the objective reports of clinical testing conducted by plaintiff's various care providers and consultative examiners reflected normal ranges of motion and full muscle strength.  Moreover, in at least two of his treatment notes, Dr. Marra found that on examination plaintiff appeared to be in "no obvious distress."  AT 262, 264.  Plaintiff's pain complaints are also belied by her conservative course of treatment; plaintiff acknowledges taking only Lortab for pain relief, and testified that she does not take Daypro, Flexeril, Ambien,

Parafon, Forte or Relafen.  AT 296, 331-32.  Indeed, in one of his notes

Dr. Eagan recommends treatment consisting solely of non-prescription

pain medication.  AT 153.  The fact that plaintiff is not required to take

more potent pain medication significantly undermines her claim of

disabling pain.  *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986);

*Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

In addition to lack of significant pain management measures,

plaintiff's conservative treatment includes her rejection of the suggestion of

surgery for her cervical disc problem, AT 303, 327; the fact that while she

was prescribed a neck brace, she used it only when necessary and was

not wearing it at the time of the hearing, AT 321, 329; the fact that use of a

cane was suggested by physical therapist, but plaintiff "just couldn't get

[her]self to get it" AT 324; and the fact, readily acknowledged by her, that

she was not undergoing physical therapy.[8]  AT 325.  In discounting

plaintiff's complaints of disabling pain ALJ Gibbons also appropriately

looked to plaintiff's daily activities, which have including driving, shopping,

---

[8]      At the time of the first hearing, a cervical collar had not been prescribed
for the plaintiff since the early 1980s.  AT 305.  By the time of the second hearing, held
on February 1, 2005, a soft neck brace had been prescribed by Dr. Marra, and
although the plaintiff was not wearing it at the time of the hearing, she reported that it
provided some relief and that she wears it a few times each week.  AT 329.

housework, attending to her personal needs, cooking, and laundry.  *See* AT 292, 315-16.

It appears that in claiming to suffer from disabling pain, plaintiff is basing the argument upon her inability to sit or stand for prolonged periods and the need to retain the flexibility to alternate positions in order to address her pain.  Such a contention, however, is not at all inconsistent with the requirements associated with sedentary work.  As the Second Circuit has noted, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

In sum, I find that the ALJ's rejection of plaintiff's claim of disabling pain is supported by substantial evidence, and was adequately explained based on the record.

### 3.    ALJ's RFC Finding

Pivotal to the ALJ's finding of no disability was his determination regarding plaintiff's RFC.  Plaintiff challenges that finding as inconsistent with evidence in the record, and reflective of the ALJ's failure to consider

the exertional and non-exertional limitations associated with her conditions.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess his or her exertional capabilities, addressing the ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404,1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there

is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

After reviewing all of the available evidence, in considering plaintiff's testimony, ALJ Gibbons concluded that plaintiff retains the RFC to perform a full range of sedentary work. Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In addition, a ruling promulgated subsequent to this controlling regulation has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period. *See* SSR 83-10.

The ALJ's finding that plaintiff is capable of performing the full range

-30-

of sedentary work draws ample support from the record.  In December of

2000, for example, Dr. Eagan – plaintiff's orthopedic specialist – opined

that she could not perform "heavy work", but that she would be "an

excellent candidate for vocational rehabilitation for light or sedentary type

of work."  AT 153.  In March of 2003 a family nurse practitioner, Lindy

Eelby, recorded a similar conclusion, finding that plaintiff should avoid

"heavy" lifting but that she could return to performing sedentary activities.

AT 185, 187, 200, 202.  These findings are fully consistent with the

functional assessment of Dr. Amelita Balagtas, a state agency physician

who examined the plaintiff on two separate occasions and opined that she

can lift and carry ten pounds occasionally and less than ten pounds

frequently; is capable of standing and walking for at least two hours in an

eight hour workday; and can sit for six hours in a similar period.[9]  AT 277-

78.  The opinions of such a non-examining physician may constitute

substantial evidence to support an ALJ's determination, provided that

there is other supporting evidence in the record.   *See* 20 C.F.R. §§

404.1527(f), 416.927(f); *see also Brunson v. Barnhart*, No. 01-CV-1829,

---

[9]      In February of 2002 a non-examining consultant completed an RFC
assessment reflecting plaintiff's ability to lift and/or carry twenty pounds occasionally
and ten pounds frequently; to stand and/or walk, and sit, with normal breaks, about six
hours in an eight hour work day, and with unlimited ability to push and/or pull.  AT 175-
82.

2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (noting that the opinions of nonexamining sources may be considered provided they are supported by evidence in the record).

It is true that in her RFC assessment, Dr. Balagtas discerned some occasional postural limitations, including in climbing, balancing, kneeling, crouching, crawling and stooping.  AT 278.  A sedentary occupational base remains intact, however, despite the ability to perform such activities on an occasional basis.  SSR 85-15; *Davis v. Callahan*, No. 96 CIV. 9367, 1997 WL 438772, at *12-13 (S.D.N.Y. Aug. 4, 1997) (citing SSR 85-15).  Dr. Balagtas also concluded in the March 19, 2005 RFC evaluation of plaintiff is limited in her ability to perform overhead activities.  AT 276.  Once again, however, a limitation regarding overhead reaching does not significantly erode the sedentary occupational job base, notwithstanding plaintiff's claim to the contrary.  *See, e.g., Flors v. Massanari*, No. 00 CIV 5767, 2002 WL 100631, at *6 (S.D.N.Y. Jan. 25, 2002) (affirming ALJ's finding that plaintiff's inability to do overhead work did not significantly limit his ability to perform sedentary work); *Carter v. Shalala*, No. 94 Civ. 4064, 1995 WL 505509, at *7-8 (S.D.N.Y. Aug. 24, 1995) (asserting that plaintiff's inability to perform heavy lifting and repetitive overhead work did

not affect her capability of performing a full range of sedentary work).

Given other objective findings revealing that despite her medical

conditions plaintiff retains good grip strength, full muscle strength, reveals

no muscle atrophy, and has no sensory abnormality in her upper

extremities, *see* AT 129, 131, 133, 134, 137, 160-63, 208, 211, 241, 244,

269-73, 275-76, the exertional limitations reflected in Dr. Balagtas' RFC

assessment do not significantly erode the job base and thus undermine

the ALJ's RFC finding.  *See Carter*, 1995 WL 505509, at *7-9.

### 4.   Failure to Consider Listings

In her brief, plaintiff also contends in passing that at step three of the

disability algorythm, ALJ Gibbons failed to consider the cumulative effects

of the limitations associated with her various conditions and determine

whether they met or equaled any of the listed impairments.  In her

argument, however, plaintiff does not disclose what particular portions of

the listings establish a presumptive disability when applied to her

circumstances.  Notably, the section cited by the plaintiff – Listing 112 –

relates to mental disorders, and thus does not appear to have applicability

in this instance.  In any event, having carefully considered the various

listings potentially implicated given plaintiff's medical circumstances, I am

unable to conclude that any of them is either met or equaled even when the full, cumulative effects of plaintiff's various conditions are considered.

　　　　5.　　Vocational Expert

Seizing upon a statement in the Appeal Councils' remand order, plaintiff now argues that the ALJ's failure to elicit testimony from a vocational expert in order to support his finding of no disability constituted "reversible error."  Plaintiff argues that the presence of significant nonexertional limitations significantly erodes the number of suitable positions available to the plaintiff in the national local economy.

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Rosa*, 168 F.3d at 78 (citations omitted).  Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved.  *Bapp*, 802 F.2d at 605.  If a plaintiff's situation fits

-34-

well within a particular classification, then resort to the grid is appropriate. *Id.* If, on the other hand, nonexertional impairments, including pain, *significantly* limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which case further evidence and/or testimony is required.[10] *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

In this instance the ALJ found the existence of no limiting conditions which would significantly erode the base of jobs available to the plaintiff and undermine reliance on the grid to determine disability. An analysis of the reports of plaintiff's treating physicians and clinical notes contained within the record belie the existence of non-exertional limitations. Under the circumstances, the Commissioner's resort to the grid in order to determine disability was appropriate, and there was no need to elicit the opinion of a vocational expert to aid in the disability inquiry.

IV.   SUMMARY AND ORDER

While by all accounts plaintiff suffers from multiple, diagnosed

---

[10]   As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

medical conditions, some of which impose not insignificant limitations on her ability to secure gainful employment, ALJ Gibbons, who conducted two separate hearings and considered the medical and other evidence in the record, properly found that plaintiff is capable of performing a full range of sedentary work and, applying that finding to the grid, concluded that there are a sufficient number of jobs in the national and local economies capable of being performed by her, thereby warranting a finding of no disability.  In arriving at that conclusion the ALJ properly discounted plaintiff's complaints of disabling pain and rejected, to the limited extent that they may be deemed contradictory, conflicting reports of plaintiff's treating physicians.  Because I find that the Commissioner's determination is supported by substantial evidence, it is therefore hereby

ORDERED, that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint in this case be DISMISSED in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this decision and order upon the parties in accordance with this court's local rules.

Dated:        August 7, 2007
              Syracuse, NY

_____
David E. Peebles
U.S. Magistrate Judge